# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kimberly K. Muschong

ERNEST v BROWN

Docket No. 168462. Argued on application for leave to appeal April 9, 2026. Decided July 29, 2026.

Keran Ernest, as personal representative of the estate of Maurice Ernest, brought a medical malpractice action in the Genesee Circuit Court, alleging that defendants failed to properly diagnose and treat Maurice when he presented to the emergency department at McLaren Regional Medical Center on July 16, 2020, with chest pain; Maurice died the following day. Plaintiff received letters of authority on June 7, 2021, which authorized her to act on behalf of Maurice's estate. Plaintiff sent defendants a notice of intent to sue (NOI) as required by MCL 600.2912b on February 10, 2023, and plaintiff filed her complaint on August 14, 2023. Defendants sought summary disposition under MCR 2.116(C)(7), arguing that plaintiff's complaint was time-barred because, under MCL 600.5805(8), the general two-year statutory limitations period to bring a medical malpractice claim had expired on July 16, 2022. Plaintiff argued that her complaint was timely filed under the wrongful-death saving provision of MCL 600.5852, which permits an appointed personal representative to file suit within two years of the date the letters of authority were issued; plaintiff contended that under MCL 600.5856(c), the limitations period was tolled for the 182-day notice period required by MCL 600.2912b(1) when, before expiration of the two-year period under the saving provision, she sent her NOI to defendants. Defendants argued that plaintiff's complaint was not timely because, under *Waltz v Wyse*, 469 Mich 642 (2004), the wrongful-death saving provision is not subject to tolling for the NOI and the statutory limitations period had therefore expired before plaintiff filed the cause of action.

The trial court, Celeste D. Bell, J., granted defendants' motions for summary disposition and dismissed plaintiff's complaint with prejudice, holding that plaintiff's complaint was untimely under *Waltz*. Plaintiff filed a claim of appeal in the Court of Appeals and a bypass application in the Supreme Court. The Supreme Court denied the bypass application. 513 Mich 1047 (2024). In an unpublished per curiam opinion, issued March 20, 2025 (Docket No. 368566), the Court of Appeals, CAMERON, P.J., and GARRETT and MARIANI, JJ., affirmed the trial court's decision, noting that it was bound by *Waltz*. Plaintiff sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on the application, asking the parties to address whether *Waltz* correctly held that MCL 600.5856(c) does not toll the additional period permitted for filing wrongful-death actions in MCL 600.5852 and, if *Waltz* was incorrectly decided, whether

*Waltz* should nonetheless be retained under principles of stare decisis. ___ Mich ___; 25 NW3d 673 (2025).

In an opinion by Justice BERNSTEIN, joined by Chief Justice CAVANAGH and Justices WELCH, BOLDEN, and HOOD, the Supreme Court, in lieu of granting leave to appeal, *held*:

1. *Waltz* erred by concluding that MCL 600.5856 does not toll the additional period permitted for filing wrongful-death actions in MCL 600.5852. MCL 600.5852 incorporates a period of limitations, such that MCL 600.5856 operates to toll MCL 600.5852; accordingly, plaintiff's complaint was timely filed.

MCL 600.2912b(1) generally provides that a plaintiff alleging medical malpractice must provide an NOI to the defendants at least 182 days prior to filing a complaint. Under MCL 600.5856(c), the running of the two-year statutory limitations period for malpractice actions in MCL 600.5805(8) is tolled during the 182-day notice period required by MCL 600.2912b(1) if the statutory limitations period would otherwise expire during the notice period; in such cases, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given. Importantly, MCL 600.5856 tolls only "statutes of limitations or repose." MCL 600.5852 provides that when a decedent dies before the statutory limitations period has run, or within 30 days after it has run, the personal representative has an additional two years to commence a lawsuit from the date the letters of authority are issued, so long as the action is commenced no later than three years after the limitations period has run.

Prior to *Waltz*, MCL 600.5852 had been characterized as a saving provision that extends the period of limitations for a personal representative to file an action. *Miller v Mercy Mem Hosp*, 466 Mich 196 (2002), then complicated matters when it held that MCL 600.5852 is a saving statute, not a statute of limitations. Two years later, *Waltz* held that MCL 600.5856 did not toll the additional period permitted for filing wrongful-death actions under MCL 600.5852 and that MCL 600.5852, by its own terms, is operational only within the context of the *separate* period of limitations that would otherwise bar an action; accordingly, *Waltz* held that MCL 600.5852 functions as only an *exception* to the limitations period.

Jurists have criticized *Waltz* since its inception. The fundamental flaw in the *Waltz* decision is that it characterized MCL 600.5852 as *solely* a saving provision and rejected a statutory reading consistent with existing caselaw that characterized MCL 600.5852 as incorporating a limitations period as well. MCL 600.5852 "saves" the cause of action from a statute-of-limitations defense for some additional period of time; in doing so, it necessarily incorporates a new limitations period, which is subject to the tolling mechanism of MCL 600.5856. Furthermore, *Waltz*'s holding implied that the Legislature did not intend MCL 600.5852 to fall within the ambit of MCL 600.5856, but the legislative history demonstrates that this conclusion is incorrect. There is no principled reason, and no demonstrated legislative intent, to conclude that personal representatives who must comply with the notice requirements of MCL 600.2912b cannot receive the accompanying tolling benefits of MCL 600.5856. *Waltz* was wrongly decided.

2. Stare decisis considerations weigh in favor of overruling *Waltz*. If a court determines that a case was wrongly decided, the court examines several factors in considering whether the

decision ought to be retained or overturned. One of these factors—whether the law or relevant facts have changed such that the prior decision should be overruled—does not favor overruling *Waltz*. However, other factors—whether the decision defies practical workability and whether reliance interests would work an undue hardship were the decision to be overruled—weigh in favor of overruling *Waltz*. Regarding workability, while *Waltz* is not difficult to apply, it has been subject to widespread, consistent criticism. Further, *Waltz* impermissibly shortened the time provided by the Legislature for people to file medical malpractice claims, and it did so with little basis in the statutory language. And in considering reliance interests, that *Waltz* erroneously read the statutory text is significant because where a judicial decision disrupts legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. Only a small set of litigants is affected by *Waltz*—those alleging a wrongful death who also attempt to benefit from the tolling of the limitations period. And no defendant has provided a persuasive explanation as to how medical malpractice defendants have altered their behavior because of reliance on *Waltz*.

Court of Appeals' judgment reversed; case remanded to the trial court for further proceedings.

Justice ZAHRA, dissenting, would have held that the plain language of MCL 600.5852 cannot be reasonably interpreted to mean that MCL 600.5852 is a statutory limitations period that may be tolled. The plainest indicator that MCL 600.5852 is not "a" period of limitations is that the statute refers to "the" separate period of limitations. MCL 600.5852 provides additional time to file an action *after* "the period of limitations has run"; this means that MCL 600.5852 cannot itself be characterized as a period of limitations. *Waltz* was barely mentioned in Michigan caselaw after 2006, and the Legislature did not act to correct *Waltz* or address jurists' concerns with *Waltz*'s holding when it amended MCL 600.5852 in 2012. Justice ZAHRA additionally joined Justice THOMAS's dissenting opinion disagreeing with the majority's stare decisis analysis.

Justice THOMAS, joined by Justice ZAHRA, dissenting, saw no compelling reason to discard *Waltz*'s holding where (1) it creates an administrable procedural rule that has been the governing law for more than 20 years and has not been shown to cause substantial real-world harm given the avenues available to avoid dismissal of a claim by filing a timely medical malpractice action notwithstanding its holding, (2) it has not been applied outside of its specific context, (3) it interpreted statutory language that did not unambiguously address the issue and used distinct legal terms of art, (4) it did not depart from then-existing precedent, as no court had previously resolved this issue, and (5) there have been no changes in the facts or law since *Waltz* was issued that undermine its holding. The majority gives almost dispositive weight to the view that *Waltz* was wrongly decided by using that conclusion to buttress multiple parts of its stare decisis analysis, and its analysis effectively operates under the presumption that *Waltz* should be overruled unless doing so would cause substantial harm. For stare decisis to do meaningful work, it carries with it a presumption in favor of retaining precedent. It is important to apply stare decisis in a principled manner out of respect for the Supreme Court and to ensure legitimacy and public respect for its decisions. Justice THOMAS discerned no strong or compelling reason to overrule *Waltz* that went beyond her skepticism of its conclusion.

# OPINION

Chief Justice:
    Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED  July 29, 2026

STATE OF MICHIGAN

SUPREME COURT

KERAN ERNEST, Personal Representative
of the ESTATE OF MAURICE ERNEST,

    Plaintiff-Appellant,

v                                                                       No. 168462

PAUL W. BROWN, JR., M.D., ELMAHDI
M. SAEED, M.D., CYPRESS
CARDIOLOGY, PLLC, and MCLAREN
HEALTH CARE CORPORATION,

        Defendants-Appellees,

and

FAROUK M. BELAL, M.D.,

        Defendant.

_____

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

This case asks us to consider whether the medical malpractice tolling provision of MCL 600.5856(c) can toll the wrongful-death saving provision of MCL 600.5852. We hold that it can. Under a plain reading of the relevant statutes, MCL 600.5852 is itself a statute of limitations that is subject to the tolling mechanism of MCL 600.5856. Because *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), held otherwise, we hold that *Waltz* was incorrectly decided and overturn that decision. We therefore reverse the Court of Appeals' judgment affirming the trial court's order granting defendants' motion for summary disposition under MCR 2.116(C)(7).

## I. FACTUAL BACKGROUND

On July 16, 2020, Maurice Ernest experienced chest pain and discomfort, and he presented to the emergency department at McLaren Regional Medical Center in Flint. After an initial exam, Dr. Paul Brown transferred Maurice to the cardiac unit for observation. Dr. Elmahdi M. Saeed was the attending physician in the cardiac unit at that time. Dr. Farouk M. Belal examined Maurice and noted a provisional diagnosis of acute coronary syndrome and hypokalemia. The next day, Maurice died from a bilateral pulmonary embolism. Plaintiff, Keran Ernest, as personal representative of Maurice's estate, filed a medical malpractice action against defendants, Brown, Saeed, Belal, Cypress Cardiology, PLLC, and McLaren Health Care Corporation, alleging that they failed to properly diagnose and treat Maurice.

At issue here is the timeliness of plaintiff's complaint. The alleged malpractice occurred on July 16, 2020. Plaintiff received letters of authority on June 7, 2021, which authorized her to act on behalf of Maurice's estate. Plaintiff sent defendants a notice of

2

intent to sue (NOI), as required by MCL 600.2912b, on February 10, 2023, and plaintiff filed her complaint on August 14, 2023. However, under MCL 600.5805(8), the general two-year statutory limitations period to bring a medical malpractice claim expired on July 16, 2022. Plaintiff argued that her complaint was timely filed under the wrongful-death saving provision of MCL 600.5852, which permits an appointed personal representative to file suit within two years of the date the letters of authority were issued. However, this provision alone could not render plaintiff's action timely because the August 14, 2023 complaint was filed more than two years after the June 7, 2021 letters of authority were issued. In other words, even applying the wrongful-death saving provision, the statutory limitations period would have expired on June 7, 2023, several months before plaintiff filed her complaint. But plaintiff argued that the limitations period was tolled for 182 days under MCL 600.5856(c) when she sent her NOI to defendants. Because the NOI was sent before the statutory limitations period would have expired if the wrongful-death saving provision applied, plaintiff argued that the NOI tolled the statutory limitations period such that the August 14, 2023 complaint would be considered timely.

Defendants sought summary disposition under MCR 2.116(C)(7), arguing that plaintiff's complaint was time-barred by the statute of limitations because, under *Waltz*, 469 Mich at 650-651, the wrongful-death saving provision is not subject to tolling for the NOI and thus the statutory limitations period had expired before plaintiff filed the cause of action. Plaintiff indicated her intent to challenge the *Waltz* decision. The trial court held that plaintiff's complaint was untimely under *Waltz*. Accordingly, the trial court granted defendants' motions and dismissed plaintiff's complaint with prejudice.

3

Plaintiff then filed a claim of appeal in the Court of Appeals and a bypass application in this Court. We denied the bypass application. *Ernest v Brown*, 513 Mich 1047 (2024). The Court of Appeals, noting that it was bound by this Court's decision in *Waltz*, affirmed the trial court's decision in an unpublished per curiam opinion. *Ernest v Brown*, unpublished per curiam opinion of the Court of Appeals, issued March 20, 2025 (Docket No. 368566). Plaintiff sought leave to appeal in this Court, and in lieu of granting leave, we ordered oral argument on the application, asking the parties to address:

> (1) whether *Waltz v Wyse*, 469 Mich 642 (2004), correctly held that MCL 600.5856(c) does not toll the additional period permitted for filing wrongful-death actions provided in MCL 600.5852; and (2) if *Waltz* was incorrectly decided, whether it should nonetheless be retained under principles of stare decisis, *Robinson v City of Detroit*, 462 Mich 439, 463-468[; 613 NW2d 307] (2000). [*Ernest v Brown*, ___ Mich ___, ___; 25 NW3d 673, 673 (2025).]

## II. WHETHER *WALTZ* WAS CORRECTLY DECIDED

### A. STANDARD OF REVIEW AND PRINCIPLES OF STATUTORY INTERPRETATION

A trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(7) is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118-119; 597 NW2d 817 (1999). "Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations." *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). Questions of statutory interpretation are also reviewed de novo. *Wyandotte Electric Supply Co v Electrical Technology Sys, Inc*, 499 Mich 127, 137; 881 NW2d 95 (2016). In interpreting a statute, our principal rule of construction is to determine and give effect to

4

the Legislature's intent, and the most reliable indicator of that intent is the plain language of the statute. *Id*.

## B. MEDICAL MALPRACTICE

The Legislature has set out a comprehensive scheme governing the timeliness of medical malpractice claims involving alleged wrongful deaths. First and foremost, a medical malpractice cause of action is subject to a general two-year statutory limitations period. MCL 600.5805(8). However, after an alleged act of medical malpractice has occurred, a plaintiff is not entitled to immediately file a complaint. Instead, MCL 600.2912b(1) requires that a plaintiff first provide an NOI to the defendants at least 182 days prior to filing a complaint. Under MCL 600.5856(c), however, the running of the two-year statutory limitations period is tolled during this 182-day notice period if the statutory limitations period would otherwise expire during the notice period. In such cases, "the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given." *Id*. Importantly, MCL 600.5856 tolls only "statutes of limitations or repose." "A statute of limitation . . . prescribes the time limits in which a party may bring an action that has already accrued." *Sills v Oakland Gen Hosp*, 220 Mich App 303, 308; 559 NW2d 348 (1996).[1]

---

[1] While MCL 600.5856 explicitly contemplates that both statutes of limitations and repose are subject to tolling, there is no contention that MCL 600.5852 ought to be characterized as a statute of repose. "A statute of repose prevents a cause of action from ever accruing when the injury is sustained after the designated statutory period has elapsed." *Sills*, 220 Mich App at 308. In this way, a statute of repose "may bar a claim before an injury or damage occurs." *Ostroth v Warren Regency, GP, LLC*, 474 Mich 36, 42 n 7; 709 NW2d 589 (2006) (quotation marks and citation omitted). In other words, a statute of repose does

In wrongful-death actions, MCL 600.5852 provides a different, extended time line for personal representatives who proceed on behalf of a decedent's estate:

> (1) If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action that survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.

> (2) If the action that survives by law is an action alleging medical malpractice, the 2-year period under subsection (1) runs from the date letters of authority are issued to the first personal representative of an estate. Except as provided in subsection (3), the issuance of subsequent letters of authority does not enlarge the time within which the action may be commenced.

> (3) If a personal representative dies or is adjudged by a court to be legally incapacitated within 2 years after his or her letters are issued, the successor personal representative may commence an action alleging medical malpractice that survives by law within 1 year after the personal representative died or was adjudged by a court to be legally incapacitated.

> (4) Notwithstanding subsections (1) to (3), an action shall not be commenced under this section later than 3 years after the period of limitations has run.

In short, MCL 600.5852 provides that when a decedent dies before the statutory limitations period has run, or within 30 days after it has run, the personal representative has an additional two years to commence a lawsuit from the date the letters of authority are issued, so long as the action is commenced no later than three years after the limitations period has run.

_____

not consider when a claim accrued but instead prevents a claim from ever accruing if the claim is not brought within a specific time frame. Here, all parties agree that the cause of action accrued when the medical malpractice occurred. Therefore, we limit our analysis to whether MCL 600.5852 is a statute of limitations.

Against this backdrop, the question we consider here is whether the wrongful-death saving provision of MCL 600.5852 ought to be characterized as a statutory limitations period such that it may be tolled by application of MCL 600.5856(c) during the 182-day notice period. Because this Court in *Waltz* held that MCL 600.5852 is *not* a period of limitations, we must examine the jurisprudential backdrop against which *Waltz* was decided before turning to the reasoning of *Waltz* itself.

## C. PRE-*WALTZ* CASELAW

Prior to the *Waltz* decision, this Court—and others—characterized MCL 600.5852 as a saving provision that extends the period of limitations for a personal representative to file an action. *Hardy v Maxheimer*, 429 Mich 422, 429-432, 441; 416 NW2d 299 (1987) (adopting as persuasive the reasoning of *Janes v Sackman Bros Co*, 177 F2d 928, 932 (CA 2, 1949), and holding that MCL 600.5852 operated to extend the period of limitations applicable to a wrongful-death action brought by a personal representative). See also *Hawkins v Regional Med Laboratories, PC*, 415 Mich 420, 438; 329 NW2d 729 (1982) (opinion by RYAN, J.) (stating that "MCL 600.5852 operates to extend the time in which to bring" actions for non-instantaneous death resulting from wrongful conduct); *McNeil v Quines*, 195 Mich App 199, 202; 489 NW2d 180 (1992) (stating that MCL 600.5852 extends the limitations period); *Lindsey v Harper Hosp*, 455 Mich 56, 61, 65; 564 NW2d 861 (1997) (referring to MCL 600.5852 as "the statute of limitations saving provision" and an "exception to the statute of limitations," which "operates to suspend the running of the statute until a personal representative is appointed to represent the interests of the estate"); *Omelenchuk v City of Warren*, 461 Mich 567, 577; 609 NW2d 177 (2000) (referring to

7

MCL 600.5852 as creating a "recalculated limitation period"), overruled in part by *Waltz*, 469 Mich at 655. This characterization is consistent with how a saving provision is described in secondary sources. 51 Am Jur 2d (May 2026 update), Limitation of Actions, § 279 ("A saving clause in a statute of limitations extends, rather than abridges, the general statute of limitations, so that if the portion of the limitation period remaining after the failure of a prior action is greater than the period allowed by the saving clause, the plaintiff is not restricted to the latter period in bringing a new action.").

Despite this general agreement, our decision in *Miller v Mercy Mem Hosp*, 466 Mich 196, 202; 644 NW2d 730 (2002), then complicated matters. In *Miller*, the Court considered whether the six-month discovery provision in MCL 600.5838a(2) is a "period of limitation." *Id*. While MCL 600.5838a(2) is not implicated in this case, the reasoning that led the *Miller* Court to conclude that MCL 600.5838a(2) should be considered a period of limitations should also have led the *Miller* Court to the same conclusion as to MCL 600.5852. MCL 600.5838a(2) provides, in pertinent part:

> Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section 5805 or sections 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.

We explained that, because MCL 600.5838a(2) requires that a person who has a cause of action "bring suit within a specified time," the provision is "an alternative to the other periods of limitation" and "is itself a period of limitation." *Id*. However, relying on *Lindsey*, 455 Mich 56, *Miller* then confusingly concluded that "[MCL 600.5852] is a saving statute, not a statute of limitations." *Miller*, 466 Mich at 202.

8

*Miller*'s holding that MCL 600.5838a(2) is a period of limitations because it would further extend the allotted time for filing reflected the Court's understanding that a statutory provision that extends the original period of limitations itself creates a new, alternative period of limitations. See *id*. at 201 n 3 (questioning, but declining to address, whether MCL 600.5838a(2), as applied to a personal representative, *further* extended the periods in MCL 600.5852). This understanding is consistent with *Omelenchuk*'s earlier characterization of MCL 600.5852 as creating a recalculated limitations period. Yet *Miller*'s insistence that MCL 600.5852 should not be considered a statute of limitations is inconsistent with *Miller*'s holding that the six-month discovery rule of MCL 600.5838a(2) is a period of limitations. No explanation is given in *Miller* as to why these two provisions, which function similarly, are given such divergent treatment.

## D. *WALTZ*

Against this convoluted backdrop, this Court in *Waltz* considered the exact question we consider now—whether MCL 600.5856 tolls the additional period permitted for filing wrongful-death actions under MCL 600.5852. In *Waltz*, the plaintiff's son died on April 18, 1994; accordingly, the two-year limitations period for malpractice actions expired on April 18, 1996. *Waltz*, 469 Mich at 645. The plaintiff sent the defendants an NOI in January 1999, was appointed personal representative of her son's estate and received her letters of authority on May 27, 1999, and then filed a complaint on June 23, 1999. *Id*. The defendants moved to dismiss the complaint as untimely because it was filed more than three years after the limitations period expired on April 18, 1996. *Id*. The plaintiff argued

9

that the three-year limitations period for a wrongful-death action was tolled under MCL 600.5856 when the plaintiff sent the defendants an NOI in January 1999. *Id*.

*Waltz* held that MCL 600.5856 did not toll the additional period permitted for filing wrongful-death actions under MCL 600.5852 and that MCL 600.5852, by its own terms, is "operational only within the context of the *separate* 'period of limitations' that would otherwise bar an action." *Id*. at 651. Accordingly, *Waltz* held that MCL 600.5852 functions as only an *exception* to the limitations period. *Id*. In so holding, *Waltz* found support in *Miller*'s characterization of MCL 600.5852 as " 'a *saving statute*, not a statute of limitations,' " *Waltz*, 469 Mich at 650, quoting *Miller*, 466 Mich at 202 (emphasis in *Waltz*), and *Lindsey*'s characterization of MCL 600.5852 as a saving provision that applies as an " '*exception* to the statute of limitations,' " *Waltz*, 469 Mich at 650, quoting *Lindsey*, 455 Mich at 65 (emphasis in *Waltz*). *Waltz* acknowledged that *Omelenchuk* repeatedly referred to MCL 600.5852 as creating a "limitation period" but dismissed *Omelenchuk*'s characterization as an "imprecise choice of words." *Waltz*, 469 Mich at 654. *Waltz* thus concluded that MCL 600.5852 "is not a statute of limitations, but a *saving* statute." *Id*. Accordingly, this Court held that the tolling provision of MCL 600.5856 did not operate to toll the additional period in MCL 600.5852 for filing wrongful-death actions. *Id*. at 655.

Justice MICHAEL F. CAVANAGH dissented, joined by Justice MARILYN J. KELLY. The dissenting justices believed that the majority failed to provide proper deference to *Omelenchuk* and that *Lindsey* and *Miller* did not support the majority's holding. *Id*. at 660, 663-664 (M. F. CAVANAGH, J., dissenting). Rather, the dissent opined that *Lindsey* and *Miller* confirmed that MCL 600.5852 should itself be considered a limitations period. Accordingly, the dissent disagreed that this Court misspoke when it referred to

10

MCL 600.5852 as a limitations period in *Omelenchuk*. *Id*. at 663. In this way, "because [MCL 600.5852] requires a plaintiff to bring suit within a specified time, [MCL 600.5852] must be considered a limitation period." *Id*. at 664.

## E.  ANALYSIS

We hold that *Waltz* erred by concluding that MCL 600.5856 does not toll the additional period permitted for filing wrongful-death actions in MCL 600.5852.

To begin, *Waltz* has long been considered suspect by a number of jurists. See *Poniewierski v William Beaumont Hosp Royal Oak*, 513 Mich 859, 860 (2023) (WELCH, J., dissenting, joined by M. K. CAVANAGH and BOLDEN, JJ.) (questioning whether *Waltz* was correctly decided); *Poniewierski v William Beaumont Hosp Royal Oak*, unpublished per curiam opinion of the Court of Appeals, issued December 1, 2022 (Docket No. 356925) (N. P. HOOD, J., concurring) (noting that he concurred with the Court of Appeals' decision because the Court of Appeals was bound by *Waltz*); *Mullins v St Joseph Mercy Hosp*, 271 Mich App 503, 514; 722 NW2d 666 (2006) (MURPHY, J., dissenting) (stating the belief that *Waltz* was wrongly decided); *Ward v Siano*, 272 Mich App 715, 736; 730 NW2d 1 (2006) (O'CONNELL, J., concurring) (noting that *Waltz* was confusing and set up a trap for prospective plaintiffs); *Mazumder v Univ of Mich Bd of Regents*, 270 Mich App 42, 62-63; 715 NW2d 96 (2006) (criticizing *Waltz* for establishing "a judicial obstacle" that "could not have been intended by the Legislature"), rev'd 480 Mich 1045 (2008); *McLean v McElhaney*, 269 Mich App 196, 207 n 2; 711 NW2d 775 (2005) (O'CONNELL, P.J.,

11

dissenting) (critiquing *Waltz*'s "disparaging description" of *Omelenchuk*).[2]  It is significant that the *Waltz* holding has been steadily criticized from its inception until now, over a period of decades.  Our holding today is contextualized by this long-spanning criticism of *Waltz*.

The fundamental flaw in the *Waltz* decision is that it characterized MCL 600.5852 as *solely* a saving provision and rejected a statutory reading consistent with existing caselaw that characterized MCL 600.5852 as incorporating a limitations period as well.  It is true that MCL 600.5852 functions as a saving provision for wrongful-death actions, but to characterize MCL 600.5852 as *only* a saving provision overlooks how the provision operates in the context of a medical malpractice action and how it was previously characterized in this Court's opinions.  See *Waltz*, 469 Mich at 663 (M. F. CAVANAGH, J., dissenting) (explaining that MCL 600.5852 was long viewed as "a limitation period because it sets forth its own period of limitations").

MCL 600.5852 "saves" the cause of action from a statute-of-limitations defense for some additional period of time; in doing so, it necessarily incorporates a new limitations period.  In other words, the saving provision "saves" the cause of action because it extends the limitations period.  Our decision in *Lindsey* illustrates this point.  Though *Lindsey* did not expressly hold that MCL 600.5852 established a statutory limitations period, it held

---

[2] Parties have continually contested *Waltz* as well.  See, e.g., *Farley v Advanced Cardiovascular Health Specialists, PC*, 266 Mich App 566; 703 NW2d 115 (2005); *King v Briggs*, 474 Mich 1113 (2006); *Wilson v Plyler*, 480 Mich 855 (2007); *Dallaire Estate v Treatment Works, Inc*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2010 (Docket No. 292971); *Mashike Estate v Riverview Med Investors Ltd Partnership*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2021 (Docket No. 354851); *Poniewierski*, 513 Mich 859.

12

that because the plaintiff did not bring her cause of action within two years of being appointed the personal representative of the estate, the cause of action was time-barred by MCL 600.5852. *Lindsey*, 455 Mich at 67. By holding that MCL 600.5852 time-barred an action, *Lindsey* necessarily understood that MCL 600.5852 incorporated some new statutory limitations period; in other words, for MCL 600.5852 to be able to time bar an action means that it functioned as a statute of limitations. In this way, this Court did not misspeak in *Omelenchuk* when it referred to MCL 600.5852 as creating a recalculated period of limitations. See *Omelenchuk*, 461 Mich at 577.[3]

Much of *Waltz*'s error, however, can be traced to the flaws of *Miller*. As explained, while the *Miller* Court classified the six-month discovery rule in MCL 600.5838a(2) as only an alternative statute of limitations, it classified MCL 600.5852 as "a saving statute, not a statute of limitations." *Miller*, 466 Mich at 202. *Miller* did so with little explanation or legal analysis, and *Waltz* likewise adopted *Miller*'s view with no additional legal analysis. Indeed, one is left to speculate as to why *Waltz* chose to adopt *Miller*'s conclusory statement that MCL 600.5852 was merely a saving statute while dismissing *Omelenchuk*'s references to MCL 600.5852 as a limitations period itself as an "imprecise choice of words." *Waltz*, 469 Mich at 654 (opinion of the Court). We instead believe that *Miller*'s reasoning as to MCL 600.5838a(2) "supports the conclusion reached in *Omelenchuk* that

---

[3] The language of the general two-year malpractice statute of limitations, MCL 600.5805(8), provides further support for this conclusion. MCL 600.5805(8) states that, "[e]*xcept as otherwise provided in this chapter*, the period of limitations is 2 years for an action charging malpractice." (Emphasis added.) The introductory clause of this provision suggests that there are multiple "period[s] of limitations" in the medical malpractice context located within Chapter 58 of the Revised Judicature Act, the chapter in which MCL 600.5852 is housed.

13

the saving provision is a limitation period" because, like the six-month discovery rule, MCL 600.5852 also "requires a plaintiff to bring suit within a specified time." *Waltz*, 469 Mich at 663-664 (M. F. CAVANAGH, J., dissenting).

Further complicating matters, neither *Miller* nor *Waltz* discussed the difference in how cases had previously described MCL 600.5852 and whether such a difference is legally meaningful. Similarly, *Waltz* did not cite any authority for its conclusion that a tolling provision should not apply to the new limitations periods created by saving statutes. Like Justice MICHAEL CAVANAGH, we "question how a claim may be considered time-barred under the saving provision if the saving provision is not a limitation period." *Waltz*, 469 Mich at 664 (M. F. CAVANAGH, J., dissenting).

While this Court does not resort to legislative history when the statutory scheme is unambiguous, see *In re Certified Question*, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003), reference to legislative history provides further support for our holding. *Waltz*'s holding implied that the Legislature did not intend MCL 600.5852 to fall within the ambit of MCL 600.5856. However, the legislative history demonstrates that such a conclusion is incorrect.

In 1993, the Legislature introduced a sea change of tort reform in the medical malpractice context. In particular, these changes included the NOI requirement and its corresponding 182-day notice period, which included the acknowledgment that the statute of limitations is to be tolled during this notice period. 1993 PA 78. The purpose of the NOI requirement, we have explained, is to "promote settlement without the need for formal litigation and reduce the cost of medical malpractice litigation while still providing compensation for meritorious medical malpractice claims that might otherwise be

14

precluded from recovery because of litigation costs." *Neal v Oakwood Hosp Corp*, 226 Mich App 701, 705; 575 NW2d 68 (1997), citing Senate Legislative Analysis, SB 270 (August 11, 1993), and House Legislative Analysis, HB 4403-4406 (March 22, 1993). At the same time, the tolling provision applies so that a plaintiff is not prejudiced during the notice period. Significantly, when the Legislature passed these amendments, it made no changes to the relevant portions of MCL 600.5852.

Nothing in the statutory scheme or its history indicates that the Legislature intended for MCL 600.5856 *not* to apply to cases that are commenced under MCL 600.5852. Indeed, "[i]t is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws." *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993), citing *Malcolm v East Detroit*, 437 Mich 132, 139; 468 NW2d 479 (1991). Here, the saving provision in MCL 600.5852 had been enacted before the NOI requirement was added by amendment. When the Legislature passed MCL 600.5856, it was not necessary for MCL 600.5856 to make explicit reference to MCL 600.5852 because *Hardy*, 429 Mich at 432, had already recognized that a saving provision extended the statutory limitations period. While our prior caselaw certainly could have been clearer, at the time that MCL 600.5856 was amended to add the NOI tolling provision, the Legislature would have understood that MCL 600.5852 extended the statutory limitations period for wrongful-death medical malpractice actions. Accordingly, the Legislature would have had no need to either expressly include or exclude in MCL 600.5856 a reference to the MCL 600.5852 saving provision.

We discern no principled reason, and certainly no demonstrated legislative intent, to conclude that personal representatives who must comply with the notice requirements of MCL 600.2912b cannot receive the accompanying tolling benefits of MCL 600.5856. Instead, under a plain reading of the relevant statutes, MCL 600.5852 "saves" the underlying action because it extends the period of limitations. The natural implication of this reading is that MCL 600.5852 itself creates a new limitations period through this extension, which is subject to the tolling mechanism of MCL 600.5856. This conclusion is faithful to both the statutory language and the intent of the Legislature. See *Miller*, 466 Mich at 203 (explaining that the purpose of MCL 600.5852 is " 'to preserve actions that survive death in order that the representative of the estate may have a reasonable time to pursue such actions' "), quoting *Lindsey*, 455 Mich at 66.[4] Accordingly, we hold that *Waltz* erred by concluding that MCL 600.5856 does not toll the additional period permitted for filing wrongful-death actions in MCL 600.5852.

## III. STARE DECISIS

Finding that a decision was wrongly decided is only the first step in determining whether that decision should be overturned. This is because, under the doctrine of stare decisis, "principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed." *Coldwater v Consumers Energy Co*, 500 Mich

---

[4] While the Legislature has not amended the statutory scheme since this Court issued *Waltz*, we note that "legislative acquiescence has been repeatedly repudiated by this Court because it is as an exceptionally poor indicator of legislative intent." *McCahan v Brennan*, 492 Mich 730, 749; 822 NW2d 747 (2012). Instead, this Court is to " 'determine the Legislature's intent from its *words*, not from its silence.' " *Id*. at 750, quoting *Donajkowski v Alpena Power Co*, 460 Mich 243, 261; 596 NW2d 574 (1999).

16

158, 172; 895 NW2d 154 (2017) (quotation marks and citations omitted). "Despite its importance, stare decisis is neither an inexorable command nor a mechanical formula of adherence to the latest decision." *McCormick v Carrier*, 487 Mich 180, 210; 795 NW2d 517 (2010) (opinion by M. F. CAVANAGH, J.) (quotation marks and citations omitted). Indeed, stare decisis "is an attempt 'to balance two competing considerations: the need of the community for stability in legal rules and decisions and the need of courts to correct past errors.' " *Id*. at 211, quoting *Petersen v Magna Corp*, 484 Mich 300, 314; 773 NW2d 564 (2009) (opinion by KELLY, C.J.). "As a reflection of this balance, there is a presumption in favor of upholding precedent, but this presumption may be rebutted if there is a special or compelling justification to overturn precedent." *McCormick*, 487 Mich at 211, citing *Petersen*, 484 Mich at 319-320 (opinion by KELLY, C.J.).

If a court does determine that a case was wrongly decided, the court then examines several factors in considering whether the decision ought to be retained or overturned: (1) "whether the decision defies practical workability," (2) "whether reliance interests would work an undue hardship were the decision to be overruled," and (3) "whether changes in the law or facts no longer justify the decision." *Coldwater*, 500 Mich at 173. We consider each factor in turn.

In determining whether a decision is practically unworkable, this Court may consider "whether the decision has been met with criticism, whether its application has been contested or difficult, and, in the context of statutory interpretation, whether a reader of the underlying statute would be unable to rely on its plain meaning in light of the decision's departure from that meaning." *Ottgen v Katranji*, 511 Mich 223, 240; 999 NW2d 359 (2023). As noted earlier, the *Waltz* decision has been subject to widespread

17

and consistent criticism by jurists and litigants alike. And the decision was a split one, issued over a lengthy two-justice dissent. This fervent criticism cuts against a finding of practical workability. *Id*. at 241 (considering the reception of a previous decision by appellate jurists and litigants and stating that the previous decision "was not joined by the full Court"). Nonetheless, the *Waltz* decision is not difficult to apply. It is true that litigants can read *Waltz* and determine that the tolling period does not apply to complaints filed under the wrongful-death saving provision. However, we must also consider the fact that *Waltz* impermissibly shortens the time provided by the Legislature for people to file medical malpractice claims. That *Waltz* did so with little basis in the statutory language is significant because a case is deemed practically unworkable when the decision "deviates from the plain meaning of the statutes, making it impossible for a reader to rely on the text of the statutes without also combing through past judicial decisions." *Ottgen*, 511 Mich at 242. *Waltz* held that a plaintiff seeking to file a wrongful-death action must abide by the NOI requirements in MCL 600.2912b but then cannot receive the tolling benefits in that very same chapter. A prospective plaintiff would have no reason to anticipate such a piecemeal application of the statute from a plain reading of the statutory text. See *Paige v Sterling Hts*, 476 Mich 495, 511; 720 NW2d 219 (2006) (reasoning that a ruling is not practically workable when "it is made more confusing and less decipherable to the ordinary citizen"). We thus hold that this factor favors overruling *Waltz*.[5]

---

[5] Justice THOMAS would still find little reason to overrule *Waltz* because, in her view, any failure to conform to *Waltz*'s requirements likely boils down to attorney error. Such reasoning cannot support retaining a flawed interpretation of a statutory scheme, especially when our stare decisis jurisprudence cautions that the readability of statutes should be considered from an ordinary person's perspective. Indeed, Justice THOMAS's dissenting

Next, in considering reliance interests, the Court examines the interests of groups, individuals, the government, and the public at large. *Ottgen*, 511 Mich at 243.[6]  Similarly, the Court "must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations."  *Coldwater*, 500 Mich at 173 (quotation marks and citation omitted).  Put another way, this factor examines whether overruling a case "would produce chaos," *McCormick*, 487 Mich at 213 (quotation marks and citation omitted), and whether "the prior decision has caused a large number of persons to attempt to conform their conduct to a certain norm," *Paige*, 476 Mich at 511.  Because

opinion relies in part on a portion of *Robinson* that, she notes, asks whether a prior decision departed from clear statutory language such that it interfered with a *citizen's* reasonable reliance on plain statutory language.

> *Waltz* did just that.  Although some *Waltz* issues might stem from attorney error, not all do.  A personal representative or other nonlawyer—relying on the statutory language—might contact an attorney after it is too late to file a wrongful-death action under *Waltz*. Put differently, because *Waltz* effectively reduced the additional time allotted under MCL 600.5852 from 24 months to 18 months, some claims are likely dead on arrival by the time an attorney is consulted.  See, e.g., *Waltz*, 469 Mich at 670-671 (M. F. CAVANAGH, J., dissenting) ("If time were not tolled for wrongful death plaintiffs in the same manner as other plaintiffs, the plain language of § 5852 is shortened by one hundred eighty-two days. A wrongful death plaintiff would have to give notices of intent at least one hundred eighty-two days before the expiration of the time provided by § 5852.  Thus, the two years expressly provided under the saving provision are effectively reduced to one-and-a-half years, and the three-year ceiling is reduced because plaintiffs are required to provide notice of intent one hundred eighty-two days before the expiration of the three-year ceiling.").  Even the best lawyering cannot save an already time-barred claim.  Consequently, we disagree with Justice THOMAS that we should wave away the flaws of *Waltz* by ascribing timing mistakes to attorney error.

[6] Like in *Ottgen*, because the issue here involves "a procedural rule pertaining to civil litigation between private plaintiffs[,] . . . there is no apparent reliance by governmental institutions or the public at large." *Ottgen*, 511 Mich at 243.

19

the reliance inquiry hinges on the effect that overruling a prior decision would have on society, we have described it as the "most important" part of the stare decisis analysis. *People v Breidenbach*, 489 Mich 1, 16; 798 NW2d 738 (2011).

It would be strange to conclude that *Waltz* has become so embedded, accepted, or fundamental to society's expectations that overruling it would produce significant dislocations, given the number of jurists and litigants over the last two decades that have called its reasoning into question. Indeed, that *Waltz* erroneously read the statutory text is significant under this factor as well because where a judicial decision disrupts "legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest." *Robinson*, 462 Mich at 467. Therefore, overruling cases that misinterpret statutory language helps carry out "the bedrock principle of American constitutionalism, i.e., that the lawmaking power is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people's representatives." *Id*.

While *Waltz* was decided more than 20 years ago, there is no reason to believe that chaos will result from overruling the decision. As acknowledged by all parties, only a small set of litigants is affected by *Waltz*—those alleging a wrongful death who also attempt to benefit from the tolling of the limitations period. To the extent that reliance interests come into play at all in these circumstances, we fail to see how defendants would be at a significant disadvantage simply by allowing for a cause of action to be tolled for, at most, 182 days in a small number of cases. Indeed, prior to *Waltz*, tolling was permissible in these circumstances, and no defendant or their supporting amici has demonstrated that defendants were prejudiced under the rule as it existed at that time.

20

Similarly, no defendant has provided a persuasive explanation as to how medical malpractice defendants have altered their behavior because of reliance on *Waltz*. As a pragmatic consideration, medical professionals "do not intend to commit malpractice" and thus do not rely on *Waltz* in their day-to-day work. *Stokes v Swofford*, 514 Mich 423, 454; 22 NW3d 97 (2024). That is, individuals and groups who benefit from *Waltz* "could have little ability to rely, *ex ante*, on the rule," see *Ottgen*, 511 Mich at 244, because medical providers cannot plan on raising a *Waltz* defense until they are sued by a plaintiff under the narrow circumstances described above. It is accordingly "difficult, if not impossible, to see how potential medical malpractice defendants could have entered into contracts, provided medical services, or engaged in ventures on the basis of [*Waltz*]." See *Ottgen*, 511 Mich at 244. See also *Paige*, 476 Mich at 512 ("There is a significant distinction between merely *complying* with precedent and affirmatively altering one's behavior in reliance on precedent."). Defendants cannot alter their behavior on the basis of *Waltz* when it merely imposed a "procedural limitation[]"; for this reason, overruling *Waltz* "would not cause 'practical, real-world dislocations' but simply 'readjustments' in litigation."[7] *In re Ferranti*, 504 Mich 1, 27; 934 NW2d 610 (2019). Thus, this factor favors overruling *Waltz*.[8]

---

[7] Justice THOMAS's dissent does not allot the appropriate weight to the reliance interests implicated here—which are exceptionally weak for defendants.

[8] Although the bench and bar have relied on *Waltz* to some degree and, thus, will have to adjust to a new rule in light of this opinion, this adjustment is not the kind of reliance interest contemplated by our stare decisis caselaw. See *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 760; 641 NW2d 567 (2002) (rejecting the notion that a reliance interest arises whenever "lawyers will have to relearn the law" because "[t]hat, of course, would be true of any overruling of precedent, but this has never before been viewed as

21

The final factor asks this Court to consider whether the law or relevant facts have changed such that the prior decision should be overruled. There has been no substantive change in the law or our underlying factual assumptions. See *Coldwater*, 500 Mich at 174. This factor, thus, does not favor overruling *Waltz*.

On balance, we conclude that stare decisis weighs in favor of overruling *Waltz*.[9] We now clarify that MCL 600.5852 incorporates a period of limitations, such that

raising a 'reliance' interest sufficient to preclude a plainly flawed reading of the law from being corrected") (emphasis omitted). Likewise, "this Court does not recognize the need to alter litigation strategy as a sufficient reliance interest preventing the overruling of precedent." *Stokes*, 514 Mich at 454.

[9] We note that there has been more than one formulation of the relevant stare decisis factors. In *McCormick*, Justice MICHAEL CAVANAGH's lead opinion also identified as relevant factors " 'whether upholding the rule is likely to result in serious detriment prejudicial to public interests,' " and " 'whether the prior decision was an abrupt and largely unexplained departure from precedent.' " *McCormick*, 487 Mich at 211, quoting *Petersen*, 484 Mich at 320 (opinion by KELLY, C.J.). These factors likewise support our decision to overturn *Waltz*.

Our interpretation of the statutory scheme is reflective of the statute's plain language. *Waltz* "altered the balance from that intended by the Legislature by imposing extra-textual burdens . . . ." *McCormick*, 487 Mich at 214. By overruling *Waltz*, we restore the legislative meaning to the statute. When this Court restores the statutory interpretation that the drafting Legislature, elected by the public, intended, the public interest is necessarily served. Moreover, *Waltz* was an abrupt change of precedent. As noted, *Hardy* explained that MCL 600.5852 extended the period of limitations for a personal representative to file suit, *Hardy*, 429 Mich at 432, and *Omelenchuk* characterized MCL 600.5852 as a "recalculated limitation period," *Omelenchuk*, 461 Mich at 577. *Waltz* did not reference *Hardy* and merely dismissed a unanimous opinion as misspoken. That *Waltz* explicitly overruled precedent with cursory analysis speaks to the abrupt nature of the *Waltz* decision. See *Adarand Constructors, Inc v Pena*, 515 US 200, 231; 115 S Ct 2097; 132 L Ed 2d 158 (1995) ("Remaining true to an 'intrinsically sounder' doctrine established in prior cases better serves the values of *stare decisis* than would following a more recently decided case inconsistent with the decisions that came before it; the latter course would simply compound the recent error and would likely make the unjustified break from previously established doctrine complete. In such a situation, 'special justification' exists

22

MCL 600.5856 operates to toll MCL 600.5852.[10]  Accordingly, plaintiff's complaint was timely filed.  We reverse the decision of the Court of Appeals and remand this case to the trial court for proceedings not inconsistent with this opinion.

## IV.  CONCLUSION

We overrule *Waltz*'s holding that the tolling provision of MCL 600.5856 cannot toll a complaint filed under the wrongful-death saving provision of MCL 600.5852.  The *Waltz*

---

to depart from the recently decided case.").  Furthermore, the abrupt nature of the *Waltz* decision is borne out by relatively contemporaneous reactions from the bench and bar.  See, e.g., *Mazumder*, 270 Mich App at 45-46 ("Before the decision in *Waltz*, the bench and bar in Michigan, including a significant portion of this Court, generally functioned with the understanding that the notice period and the notice tolling provision operated together so that the two-year saving period permitted for filing a wrongful death action by a personal representative would be tolled during the 182-day waiting period."); *Ward*, 272 Mich App at 739 (O'CONNELL, J., concurring) (noting that "untold numbers of plaintiff and defense attorneys were surprised by what they perceived as a dramatic change in the law" and that "most members of the bench, including myself, were also surprised to discover that MCL 600.5852 did not contain any periods of limitations, so the general tolling statute 'plainly' did not apply to it").

[10] Justice THOMAS misreads our analysis on the issue of stare decisis.  Her dissent suggests that because we have concluded that *Waltz* was wrongly decided, we must overturn the decision unless the stare decisis factors caution otherwise.  Indeed, the dissent argues that we place near "dispositive weight" on the fact that *Waltz* was wrongly decided to justify our decision to overturn it.  Justice THOMAS minimizes the fact that we have expressly considered a multitude of stare decisis factors to support our conclusion.  But, more specifically, Justice THOMAS misses the fundamental point that we make here—we overturn *Waltz* so that we may restore the legislative meaning to the statutory scheme.  As discussed earlier in this opinion, our stare decisis jurisprudence is quite clear that overturning a decision that misreads a statute implicates unique considerations.  This much makes sense.  If this Court were to uphold a decision that erroneously reads a statute, this Court would act as a second Legislature.  Given that there are no exceptional reliance interests or workability issues here, it is our duty to restore interpretation of this statutory scheme to that intended by our Legislature.  Unlike the dissent's proposed course, we cannot allow an erroneous decision to stand and usurp the Legislature's lawmaking authority under these circumstances.

decision finds no support in the plain language of the relevant statutes and is unsupported by legislative history. It likewise fails to consider the practical reality that a saving provision necessarily creates a new time period for the filing of actions. And stare decisis does not compel the retention of *Waltz*'s flawed rule. For these reasons, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.

Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Noah P. Hood

24

# STATE OF MICHIGAN

## SUPREME COURT

KERAN ERNEST, Personal Representative
of the ESTATE OF MAURICE ERNEST,

      Plaintiff-Appellant,

v

      No. 168462

PAUL W. BROWN, JR., M.D., ELMAHDI
M. SAEED, M.D., CYPRESS
CARDIOLOGY, PLLC, and MCLAREN
HEALTH CARE CORPORATION,

      Defendants-Appellees,

and

FAROUK M. BELAL, M.D.,

      Defendant.

---

ZAHRA, J. (*dissenting*).

The majority opinion overrules *Waltz v Wyse*,[1] which has stood for more than 20 years, by largely regurgitating the poorly reasoned and unnecessarily convoluted dissenting opinion in *Waltz*. There is no dispute that MCL 600.5856(c) expressly tolls the "statute of limitations." The majority, like the dissent in *Waltz*, would "characterize" MCL 600.5852 as a statutory limitations period that may be tolled. Put simply, the plain language of MCL 600.5852 cannot be reasonably interpreted in this manner. MCL 600.5852 provides:

---

[1] *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004).

(1) If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action that survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.

(2) If the action that survives by law is an action alleging medical malpractice, the 2-year period under subsection (1) runs from the date letters of authority are issued to the first personal representative of an estate. Except as provided in subsection (3), the issuance of subsequent letters of authority does not enlarge the time within which the action may be commenced.

(3) If a personal representative dies or is adjudged by a court to be legally incapacitated within 2 years after his or her letters are issued, the successor personal representative may commence an action alleging medical malpractice that survives by law within 1 year after the personal representative died or was adjudged by a court to be legally incapacitated.

(4) Notwithstanding subsections (1) to (3), an action shall not be commenced under this section later than 3 years after the period of limitations has run.

The plainest indicator that MCL 600.5852 is not "a" period of limitations is that the statute refers to "the" separate period of limitations. Further, MCL 600.5852 provides additional time to file an action *after* "the period of limitations has run"; this means that MCL 600.5852 cannot itself be "characterized" as a period of limitations. Indeed, the majority claims that "MCL 600.5852 'saves' the underlying action because it extends the period of limitations." But why, then, does MCL 600.5852 permit actions after "the period of limitations has run"? The obvious answer is that MCL 600.5852 is not a period of limitations. No amount of artful "characterization" can alter these immutable facts regarding MCL 600.5852.

The majority claims that "*Waltz* has long been considered suspect by a number of jurists." Pathetically, the majority opinion names a total of six jurists, four of whom constitute the current justices of this Court who have signed the majority opinion. One

Court of Appeals judge stated that he believed *Waltz* was wrongly decided, and another found *Waltz* confusing. The Court of Appeals judges expressed these beliefs in cases issued in 2005 and 2006, and the justices' beliefs were noted in statements made in cases from 2022 and 2023. What is not addressed in the majority opinion is that *Waltz* was barely mentioned in our caselaw after 2006 until the current justices supporting the majority opinion began to resuscitate those suspicions that had been dismissed and nearly forgotten 15 years earlier. This period of dormancy during which *Waltz* has controlled has not been at all problematic. Indeed, the instant case strikes me as a rare instance in which plaintiff's counsel simply dropped the ball.

More importantly, the Legislature did not act to correct these jurists' concerns when the Legislature amended the statute in question in 2012. At the time *Waltz* was decided, MCL 600.5852, as amended by 1988 PA 221, provided:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run. But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run.

In 2012, the Legislature amended the statute to have four subsections.[2] The current statute is quoted earlier in this opinion. The first sentence in the prior version is now Subsection (1), and the language remained exactly the same. The second sentence became Subsection (4), with no substantive change to the language. The Legislature added Subsection (2) to limit the saving period to a single two-year period from the date letters of authority are

---

[2] 2012 PA 609, effective March 28, 2013.

3

issued to the first personal representative, thereby precluding a plaintiff from claiming multiple saving periods by changing personal representatives. Subsection (3) was added to provide a one-year saving period for a successor representative in the event of death or legal incapacitation of a personal representative.

The Legislature did not take this amendment process as an opportunity to state that MCL 600.5852 was a period of limitations or that MCL 600.5856 applies to MCL 600.5852. "When statutory provisions are construed by the court and the Legislature reenacts the statute, it is assumed that the Legislature acquiesced to the judicial interpretation."[3] The Legislature in no manner questioned *Waltz*'s interpretation of MCL 600.5852, and in the 22 years since *Waltz* was decided, the Legislature has only restricted the saving period in MCL 600.5852 to prevent an estate from claiming multiple saving periods.

The majority opinion's stare decisis analysis is perfunctory and heavily biased in favor of overruling *Waltz*. Justice THOMAS has penned a compelling opinion disagreeing with the majority opinion's stare decisis analysis, which I join.

Brian K. Zahra

---

[3] *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 373; 781 NW2d 310 (2009), citing *Smith v Detroit*, 388 Mich 637, 650-651; 202 NW2d 300 (1972).

STATE OF MICHIGAN

SUPREME COURT

KERAN ERNEST, Personal Representative
of the ESTATE OF MAURICE ERNEST,

      Plaintiff-Appellant,

v                                    No. 168462

PAUL W. BROWN, JR., M.D., ELMAHDI
M. SAEED, M.D., CYPRESS
CARDIOLOGY, PLLC, and MCLAREN
HEALTH CARE CORPORATION,

      Defendants-Appellees,

and

FAROUK M. BELAL, M.D.,

      Defendant.

_____

THOMAS, J. (*dissenting*).

## I.  INTRODUCTION

The question in this case is whether we should overrule our prior decision in *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004).  Stare decisis (i.e., adherence to a previous ruling of this Court) "is generally the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Robinson v Detroit*, 462 Mich 439, 463; 613 NW2d 307 (2000) (quotation marks and citation omitted).  While stare decisis is not "an inexorable command" that precludes the

Court from overruling a previous decision, *id*. at 464 (quotation marks and citation omitted), "the mere fact that an earlier case was wrongly decided does not mean overruling it is invariably appropriate," *id*. at 465. "After all, if we fully agreed with the way a previous case was decided we wouldn't need stare decisis—we'd just decide the next related question the same way. If stare decisis means anything, it means not every judicial decision is up for grabs from scratch." *People v Stovall*, 510 Mich 301, 331; 987 NW2d 85 (2022) (MCCORMACK, C.J., concurring).

I am not categorically opposed to overruling precedent, but there must be a compelling reason to overrule a case. It is not enough that I disagree with the decision and that overruling it would not cause substantial harm; that approach threatens to flip stare decisis on its head by creating a presumption that this Court should overrule precedent with which it disagrees. We may not do so. Instead, even if we would have resolved the issue differently, we should refrain from overruling precedent absent a compelling reason.[1]

I tend to agree with the majority that *Waltz* was wrongly decided, and I agree that there would not be a significant disruption of reliance interests if *Waltz* were overruled. However, the majority does not persuasively identify any strong or compelling affirmative reasons why *Waltz* should be overruled beyond disagreement with its holding. I see no compelling reason to discard *Waltz*'s holding where (1) it creates an administrable procedural rule that has been the governing law for more than 20 years and has not been

---

[1] See *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 768-769; 641 NW2d 567 (2002) (M. F. CAVANAGH, J., dissenting) (critiquing the "unwelcome practice of changing judicially established statutory interpretations with the makeup of the Court" because it "fosters the undesired practice of rehashing settled debates simply because the majority concludes that someone had a better argument").

shown to cause substantial real-world harm given the avenues available to avoid dismissal of a claim by filing a timely medical malpractice action notwithstanding its holding, (2) it has not been applied outside of its specific context, (3) it interpreted statutory language that did not unambiguously address the issue and used distinct legal terms of art, (4) it did not depart from then-existing precedent, as no court had previously resolved this issue, and (5) there have been no changes in the facts or law since *Waltz* was issued that undermine its holding.

In sum, because I see no strong reason to depart from stare decisis in this situation and overrule *Waltz*, I respectfully dissent.

## II. ANALYSIS

The majority primarily organizes its stare decisis analysis through the lens of the factors articulated in *Robinson*, 462 Mich at 464,[2] while including a footnote that nods to other relevant factors described in Justice MICHAEL CAVANAGH's opinion in *McCormick v Carrier*, 487 Mich 180, 209-214; 795 NW2d 517 (2010) (opinion by M. F. CAVANAGH, J.). Since *Robinson* was issued, this Court has frequently relied on the *Robinson* factors when examining whether to overrule a prior decision. See, e.g., *Stokes v Swofford*, 514 Mich 423, 451-455; 22 NW3d 97 (2024). While the *Robinson* factors are relevant to a stare decisis analysis, I would view them as not precluding consideration of additional

---

[2] The majority directly cites *Coldwater v Consumers Energy Co*, 500 Mich 158; 895 NW2d 154 (2017), but *Coldwater* relied on the three factors first articulated in *Robinson*. See *Coldwater*, 500 Mich at 173 (stating that courts "should review whether the decision defies practical workability, whether reliance interests would work an undue hardship were the decision to be overruled, and whether changes in the law or facts no longer justify the decision"), citing *Robinson*, 462 Mich at 464.

3

relevant factors, like those articulated by Justice MICHAEL CAVANAGH in *McCormick*.[3]

These various formulations are efforts to articulate factors that appear in different cases to provide the "something more" that is needed to overrule a decision beyond simply a legal disagreement with the result reached.[4]  I, therefore, consider various factors that are relevant to this inquiry.

---

[3] See *McCormick*, 487 Mich at 209-214 (opinion by M. F. CAVANAGH, J.); see also *Petersen v Magna Corp*, 484 Mich 300, 315-320; 773 NW2d 564 (2009) (opinion by KELLY, C.J.) (arguing that a strict application of the *Robinson* stare decisis test "is insufficiently respectful of precedent" and providing a list of additional nonexclusive factors to consider).

[4] See *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.); *Petersen*, 484 Mich at 317 (opinion by KELLY, C.J.).  Other courts have formulated their inquiries in different ways, with some resemblance.  Compare, e.g., *Payne v Tennessee*, 501 US 808, 842-844; 111 S Ct 2597; 115 L Ed 2d 720 (1991) (Souter, J., concurring) (finding a "special justification" for overruling a case that created "unresolved tension" with other legal doctrines, was unworkable, and, if extended, would "create a risk of arbitrary results"), with *id.* at 834-835 (Scalia, J., concurring) (arguing that it was proper to overrule a case announcing a novel rule that "significantly harms our criminal justice system and is egregiously wrong"), and with *id.* at 848-849 (Marshall, J., dissenting) (opining that a "special justification" is needed to overrule precedent and articulating bases for finding such a justification that focus on later changes that undermine the prior decision).

Further, our Court has not explicitly taken this path, but some have suggested that the nature or subject matter of the rule being examined might impact the stare decisis analysis; for example, courts might treat overruling a rule of statutory interpretation differently from overruling a constitutional rule.  See, e.g., *Kimble v Marvel Entertainment, LLC*, 576 US 446, 456; 135 S Ct 2401; 192 L Ed 2d 463 (2015); *People v Tanner*, 496 Mich 199, 251; 853 NW2d 653 (2014) (noting that "[w]hen questions before this Court implicate the Constitution, this Court arguably has an even greater obligation to overrule erroneous precedent"); *North American Brokers, LLC v Howell Pub Sch*, 502 Mich 882, 886 (2018) (MCCORMACK, J., concurring) (suggesting that stare decisis considerations might apply more strongly in cases involving property and contract rights, where reliance interests are involved).  In this instance, the nature of the rule might bear on the stare decisis inquiry, in that the rule in question is a procedural filing rule that, in and of itself, does not alter any substantive legal right of a party.  Further, at least on this record, this procedural rule has not been shown to be so short as to limit access to the courts in the relevant cases.

4

The majority uses its disagreement with *Waltz*'s holding as a springboard for most of its stare decisis analysis. Despite acknowledging that "the *Waltz* decision is not difficult to apply," the majority concludes that the *Robinson* practical-workability factor favors overruling *Waltz* because *Waltz* misread the applicable statutes and, therefore, "impermissibly shortens the time provided by the Legislature for people to file medical malpractice claims." Next, the majority relies on the fact that "*Waltz* erroneously read the statutory text" to support the conclusion that the *Robinson* reliance-interest factor also supports overruling *Waltz*. Finally, the majority relies exclusively on a disagreement with *Waltz*'s holding to conclude that upholding it " 'is likely to result in serious detriment prejudicial to public interests.' " *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.), quoting *Petersen v Magna Corp*, 484 Mich 300, 320; 773 NW2d 564 (2009) (opinion by KELLY, C.J.). The only other considerations the majority relies upon to support overruling *Waltz* are that multiple jurists and litigants have questioned *Waltz*'s correctness, that overruling *Waltz* will not create "chaos" or "practical, real-word dislocations" for potential medical malpractice defendants, and that, in the majority's view, *Waltz* was an inadequately explained abrupt change of precedent.[5]

---

[5] The majority criticizes my characterization of its stare decisis analysis as turning substantially on the conclusion that *Waltz* was wrongly decided, contending that I "minimize[] the fact that we have expressly considered a multitude of stare decisis factors to support our conclusion." But in that same footnote, the majority again suggests that the fact that *Waltz* was wrongly decided is the paramount consideration in its analysis. Moreover, I have listed in this dissent the portions of the majority's stare decisis analysis that rely upon its disagreement with *Waltz*'s holding and all the other considerations that the majority relies upon in its stare decisis analysis.

In my opinion, the majority's analysis falls short in three primary ways. First, the majority gives almost dispositive weight to their view that *Waltz* was wrongly decided by using that conclusion to buttress multiple parts of their stare decisis analysis. Second, rather than look for an affirmative reason to overrule *Waltz* and discard the existing rule, the majority's analysis effectively operates under the presumption that *Waltz* should be overruled unless doing so would cause substantial harm. Finally, the majority treats the relevant stare decisis considerations as binary rather than as questions of degree. For stare decisis to do meaningful work, it carries with it a presumption in favor of retaining precedent. Further, because the analysis of whether to overturn precedent involves questions of degree, the inquiry must be undertaken with an eye toward whether there is a strong or compelling reason to discard the existing rule that goes beyond disagreement with the decision.[6]

_____

[6] The majority argues that "our stare decisis jurisprudence is quite clear that overturning a decision that misreads a statute implicates unique considerations" because the failure to overturn that precedent would effectively usurp the Legislature's lawmaking authority. I agree that there are "unique considerations" in this context, although I do not see that the majority has shown how they would counsel for a less stringent stare decisis analysis than in another context or case. See, e.g., *Tanner*, 496 Mich at 251 ("When questions before this Court implicate the Constitution, this Court arguably has an even greater obligation to overrule erroneous precedent."); *Kimble*, 576 US at 456 ("[S]tare decisis carries enhanced force when a decision . . . interprets a statute. Then, unlike in a constitutional case, critics of our ruling can take their objections across the street, and Congress can correct any mistake it sees."). Our prior decisions do not suggest that stare decisis has no applicability to holdings on questions of statutory interpretation or that mere disagreement with a decision is a sufficient justification for overruling it. Indeed, the majority here declines to endorse such an approach by referring to stare decisis factors and language from opinions that are not explicitly reflected in the frequently cited *Robinson* stare decisis factors, including the majority's recognition that there is a presumption in favor of upholding precedent that must be rebutted by "a special or compelling justification." *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.), citing *Petersen*, 484 Mich at 319-320 (opinion by KELLY, C.J.). At bottom, I believe that stare decisis must do work for cases

6

For instance, our caselaw considers not only whether we think the prior decision was legally wrong but also *how clearly* the Legislature (or this Court in judicial opinions preceding the one at issue) spoke on the matter and, thus, how egregiously the Court erred in its interpretation of the statutes.[7] Relatedly, instead of looking only at whether the prior interpretation had some practical impact on the statute's applicability (which presumably would be true for all decisions interpreting a statute), we should ask *how much* practical difference the holding has made.[8] The majority does not conduct this type of analysis in

involving statutory interpretation, as the justifications for this presumption, including " 'the need of the community for stability in legal rules and decisions,' " also apply in this context. *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.), quoting *Petersen*, 484 Mich at 314 (opinion by KELLY, C.J.).

[7] Our prior opinions overruling precedent support this understanding, as they consistently conclude that the pertinent statutory language is "clear" or "plain." See, e.g., *Robinson*, 462 Mich at 467 ("[I]f the words of the statute are *clear*, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts.") (emphasis added); *Ottgen v Katranji*, 511 Mich 223, 240; 999 NW2d 359 (2023) (stating that considerations relevant to a stare decisis analysis include "whether a reader of the underlying statute would be unable to rely on its *plain meaning* in light of the decision's departure from that meaning") (emphasis added); *Stokes*, 514 Mich at 454 (explaining that the decision at issue "departed from the *plain meaning* of MCL 600.2169") (emphasis added); *Paige v Sterling Hts*, 476 Mich 495, 510; 720 NW2d 219 (2006) ("[The decision at issue] defies practical workability because a person reading the statute surely would not know that he or she cannot rely *on what the statute plainly says*. That is, a reader and follower of the statute would, because of [the decision's] rewrite, not be behaving in accord with the law. Such a regime is unworkable in a rational polity.") (emphasis added).

[8] Again, this approach is consistent with prior articulations of when it is appropriate to overrule precedent. See, e.g., *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.) (considering " 'whether reliance on the rule is such that overruling it would cause a *special* hardship and inequity' " and " 'whether upholding the rule is likely to result in *serious* detriment prejudicial to public interests' "), quoting *Petersen*, 484 Mich at 320 (opinion by KELLY, C.J.) (emphasis added); *Robinson*, 462 Mich at 466 (considering "whether overruling [a decision] would work an *undue* hardship") (emphasis added); *Coldwater*, 500 Mich at 173 (considering " 'whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would

any depth. Viewing this on a spectrum, rather than categorically, I conclude that there is not a strong or compelling justification for departing from stare decisis in this situation.

## A. PRACTICAL EFFECT OF *WALTZ*

I start with the practical effect of *Waltz*'s holding and the potential impact of overruling that decision.[9]

*Waltz* addressed the interplay between the requirement to mail a notice of intent to sue (NOI) before filing a medical malpractice action[10] and the preexisting statute providing extra time for a personal representative to file a civil action on behalf of a deceased person, see MCL 600.5852. Under MCL 600.2912b, a plaintiff must mail to any potential medical malpractice defendant an NOI that contains certain information about the potential claim. After mailing the NOI, the plaintiff is required to wait a certain amount of time (up to 182 days) before filing a medical malpractice action. *Id.*[11] The mailing of the NOI tolls the

produce not just readjustments, but practical real-world dislocations' "), quoting *Robinson*, 462 Mich at 466; *Ottgen*, 511 Mich at 242 (identifying *multiple* ways in which a prior decision had given rise to workability problems as applied to other scenarios).

[9] See, e.g., *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.) (considering " 'whether upholding the rule is likely to result in serious detriment prejudicial to public interests' " and " 'whether the rule has proven to be intolerable because it defies practical workability' "), quoting *Petersen*, 484 Mich at 320 (opinion by KELLY, C.J.); *Robinson*, 462 Mich at 466 (considering the practical workability of a rule and the likely impact if that decision were overruled); *Ottgen*, 511 Mich at 240 (considering "the reception of the decision by courts and parties and the ease of its application").

[10] See, e.g., MCL 600.2912b; MCL 600.5856(c).

[11] See also *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 325; 901 NW2d 577 (2017) ("We have made clear that a plaintiff must wait the *entire* 182 days before filing a complaint."). The plaintiff may file earlier if, for example, the defendant does not respond to the NOI, MCL 600.2912b(8), or if the defendant provides notice in writing that they do not intend to settle the claim, MCL 600.2912b(9).

running of the medical malpractice "statute of limitations or repose" during the applicable mandatory NOI waiting period. MCL 600.5856(c). This means that, after the mandatory waiting period elapses, a plaintiff generally has the same number of days to file their medical malpractice action that they had on the day they mailed the NOI.[12]

MCL 600.5852 addresses the timing of commencement of civil claims that are brought on behalf of a deceased person. The personal representative of their estate may file any civil action (including a medical malpractice action) within two years from the time "letters of authority are issued *although the period of limitations has run*." MCL 600.5852(1) (emphasis added).[13] This means that a claim may be timely filed by a personal representative for some period after a claim brought by a living plaintiff would be deemed untimely, with the amount of additional time determined by when the letters of authority are issued. *Id*.[14] There is no dispute that a personal representative who intends to file a

---

[12] Tolling begins when the NOI is mailed, regardless of when it is received by the putative defendant. See MCL 600.2912b(2) ("Proof of the mailing constitutes prima facie evidence of compliance with this section."); MCL 600.5856(c) (providing for tolling "[a]t the time notice is given in compliance with the applicable notice period under [MCL 600.2912b]"); see also *DeCosta v Gossage*, 486 Mich 116, 126; 782 NW2d 734 (2010) (opinion by WEAVER, J.) ("The statute does not require that a defendant receive an NOI before the period of limitations expires. When a defendant receives the NOI is irrelevant.").

[13] This provision applies if the individual dies either "before the period of limitations has run or within 30 days after the period of limitations has run . . . ." *Id*.

[14] But see MCL 600.5852(4) (providing that, regardless of when the letters of authority are issued, "an action shall not be commenced under this section later than 3 years after the period of limitations has run").

medical malpractice action on behalf of a deceased person must mail an NOI and wait the applicable amount of time before filing a lawsuit.[15]

*Waltz* held that the additional time provided by MCL 600.5852(1) is not a "statute of limitations or repose"—the language used in the tolling statute, MCL 600.5856(c)—and, therefore, is not subject to tolling upon the mailing of an NOI. For some personal representatives, this holding effectively reduces the extra time that MCL 600.5852(1) provides to file a medical malpractice action by up to 182 days; they are required to mail an NOI and wait the applicable time before filing a claim, but a subsequent claim is barred if the NOI is mailed within that extra time and the remainder of that time expires during the mandatory waiting period. See generally *Waltz*, 469 Mich at 669-672 (M. F. CAVANAGH, J., dissenting). This is a more than *de minimis* reduction in time that will bar at least some medical malpractice claims that would proceed if NOI tolling were recognized. But stopping the analysis there overlooks several significant points that mitigate the practical impact of *Waltz*'s effective reduction in time on the ability to file a timely medical malpractice action.

Under *Waltz*, a claim brought on behalf of a deceased person is still subject to tolling under MCL 600.5856(c) if the NOI is mailed within two years from the acts or omissions giving rise to the claim or, if applicable, during the six months after the plaintiff discovered

---

[15] See MCL 600.2912b(1) ("[A] person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice . . . ."); cf. *Halton v Fawcett*, 259 Mich App 699, 704; 675 NW2d 880 (2003) (concluding that an NOI is properly mailed if the same "person" who mailed it was later named the personal representative of the estate).

or reasonably should have discovered the existence of the medical malpractice claim.[16] Tolling is precluded only if both these periods have expired and the only remaining time to file the action is provided by MCL 600.5852. Moreover, both the NOI and a subsequent medical malpractice complaint can be mailed or filed by a person before they are issued letters of authority that formally appoint them as the personal representative.[17] Finally, any defects in the contents of the NOI do not defeat tolling of the statute of limitations, and defects result in dismissal with prejudice only if the person failed to make a good-faith effort to satisfy the statutory requirements.[18] Viewed together, there are many steps one can take to file a timely medical malpractice action on behalf of a deceased person notwithstanding *Waltz*'s holding.

---

[16] See *Waltz*, 469 Mich at 652 n 14 (opinion of the Court) (observing that the "plaintiff was entitled to a 182-day tolling period under [now MCL 600.5856(c)], provided that she filed her notice of intent at some point before the expiration of that two-year limitation period"); *Miller v Mercy Mem Hosp*, 466 Mich 196, 202; 644 NW2d 730 (2002) (holding that the six-month discovery rule for medical malpractice actions was a "period of limitation" subject to personal-representative tolling); see also *Vanslembrouck v Halperin*, 277 Mich App 558, 567-570; 747 NW2d 311 (2008) (distinguishing *Waltz* and holding that MCL 600.5851(7)—which addresses medical malpractice claims that accrue before a person's eighth birthday—provides an alternative statute of limitations that is subject to NOI tolling).

[17] See *Halton*, 259 Mich App at 704 (holding that any "person" who is going to file the claim must mail the NOI, which includes a person who later became the personal representative but was not so when the NOI was mailed); *Eversole v Nash*, ___ Mich App ___, ___; ___ NW3d ___ (June 13, 2024) (Docket No. 366556); slip op at 11 (holding that one who improperly filed a medical malpractice action before they were named personal representative could apply the relation-back statute, MCL 700.3701, to preserve the claim even though the statutory period of limitations had since expired).

[18] See *Bush v Shabahang*, 484 Mich 156, 170, 177-178; 772 NW2d 272 (2009), citing MCL 600.2301; see also *DeCosta*, 486 Mich at 125-127 (opinion by WEAVER, J.) (suggesting that the same analysis applies to an NOI that is mailed to the wrong location); *id*. at 128 (KELLY, C.J., and M. F. CAVANAGH, J., concurring in the result) (providing a majority for the result in *DeCosta*).

I do not mean to downplay the practical and emotional difficulties of administering the estate of a loved one and deciding whether to file a medical malpractice action on their behalf. But given the opacity of the statutory language and the myriad ways to avoid *Waltz*'s consequence, any claims that are untimely filed because of *Waltz* are more likely to be the result of attorney error or ignorance of the law. I agree with the majority that the need for attorneys to adjust their litigation strategies in light of changing caselaw is not enough of a reliance interest to weigh against overruling a wrongly decided case. See, e.g., *Stokes*, 514 Mich at 454-455 (expressing confidence that lawyers are well equipped to learn and adapt to changes in the law). This is particularly true where the *Waltz* rule, and the path to avoid an untimely filing, have been in place for more than 20 years at this point.[19]

As the majority recognizes, only a relatively small set of litigants are affected by *Waltz*'s holding: those who seek to file a medical malpractice action on behalf of a deceased person but do not mail the NOI during the time when a living plaintiff could file a timely claim. Additionally, in the more than 20 years since *Waltz* was issued, *Waltz*'s reasoning has not been applied outside the context of NOI tolling of the two-year period in MCL 600.5852.[20] MCL 600.5838a(2) describes multiple alternative "applicable period[s]"

---

[19] During oral argument in this Court, plaintiff's attorney conceded that there are not a large number of claims that are precluded because of *Waltz* and that *Waltz* has only affected a narrow subset of cases. Relatedly, the attorney representing amicus curiae Michigan Association of Justice acknowledged that *Waltz* created a workable rule that attorneys quickly discovered they could "work around" by mailing an NOI within 18 months.

[20] Cf. *Ottgen*, 511 Mich at 241-242 (finding it relevant that a prior decision had led to "a series of workability problems involving the uncertain effect of [that decision's] analysis on related questions") (quotation marks and citation omitted). This Court had previously relied in part on *Waltz* to hold that a defective affidavit of merit (AOM) filed with a medical malpractice complaint did not toll the time remaining to bring a claim if the applicable limitations period had expired. See *Ligons v Crittenton Hosp*, 490 Mich 61, 90; 803 NW2d

12

within which a medical malpractice action can be brought. The listed "applicable period[s]" include two years from the act or omission giving rise to the medical malpractice claim,[21] six months after the plaintiff discovers or should have discovered the existence of the claim (if later than the two-year accrual period), and the periods prescribed in MCL 600.5851 through MCL 600.5856. These cross-referenced statutes include within them more than a dozen separate provisions addressing when a civil action can be brought under specific scenarios.[22]

As noted, *Waltz*'s holding does not apply to the alternative two-year accrual or six-month discovery periods; an NOI mailed by a personal representative within either time frame triggers tolling of the remaining time in that period.[23] And there is no binding Michigan appellate authority expanding *Waltz*'s reasoning to any other "applicable period" for filing a medical malpractice action within MCL 600.5851 through MCL 600.5856. To

---

271 (2011). However, this Court later adopted a court rule that permitted a plaintiff to file an amended AOM that related back to the time of the original filing. See MCR 2.112(L)(2)(b); *Legion-London v Surgical Institute of Mich Ambulatory Surgery Ctr, LLC*, 331 Mich App 364; 951 NW2d 687 (2020); see also *Ottgen*, 511 Mich at 228 (overruling prior caselaw and holding that a complaint filed without an AOM still tolled the running of the statutory period of limitations). Thus, *Ligons* has little, if any, remaining practical effect.

[21] See MCL 600.5838a(2) (referring to the period provided in MCL 600.5805); MCL 600.5805(8) (providing a general period of limitations for any malpractice claim as two years from accrual); MCL 600.5838a(1) (stating that a medical malpractice claim "accrues at the time of the act or omission that is the basis for the claim").

[22] See, e.g., MCL 600.5851 (including multiple provisions addressing when a minor or a person declared to be insane may file a claim); MCL 600.5855 (providing extra time to bring a civil action if the defendant fraudulently conceals the existence of the claim).

[23] See *Waltz*, 469 Mich at 652 n 14; *Miller*, 466 Mich at 202.

13

the contrary, there are decisions holding or suggesting that some of the other provisions in this range are statutes of limitations and, therefore, would be subject to NOI tolling.[24] This makes sense, as *Waltz*'s holding relies heavily on language in MCL 600.5852(1)— "although the period of limitations has run"—that is not used in most of the surrounding statutory provisions.[25]

In sum, there are myriad ways to file a timely medical malpractice action notwithstanding *Waltz*'s holding. *Waltz* established a workable rule for attorneys and judges to apply, its holding affects a fairly narrow class of persons, and its holding has not been extended to other contexts. While I agree with the majority that overruling *Waltz* would not significantly disrupt current reliance interests, I don't believe that this fact alone justifies overruling *Waltz*.

---

[24] See *Vanslembrouck*, 277 Mich App at 567-570 (distinguishing *Waltz* and holding that MCL 600.5851(7)—which addresses medical malpractice claims that accrue before a person's eighth birthday—provides an alternative statute of limitations that is subject to NOI tolling); *McLain v Roman Catholic Diocese of Lansing*, 514 Mich 1, 17-22; 22 NW3d 284 (2024) (holding that MCL 600.5851b(1)—which addresses when a minor subject to criminal sexual conduct "may commence an action"—operates to "toll the accrual date").

[25] The only surrounding provisions that use similar or identical language are MCL 600.5851(1) (addressing the time for a person under 18 years old or a person declared to be insane to file an action and using the language "although the period of limitations has run") and MCL 600.5855 (providing for tolling if a defendant fraudulently conceals a claim and using the language "although the action would otherwise be barred by the period of limitations"). While both provisions could apply to a medical malpractice action, see *Vega v Lakeland Hosps at Niles & St Joseph, Inc*, 479 Mich 243; 736 NW2d 561 (2007); MCL 600.5838a(2), there appear to be no appellate decisions addressing whether NOI tolling would apply to any extra time these provisions provide.

## B. DEPARTURE FROM STATUTORY LANGUAGE AND PRECEDENT

Next, I consider the extent to which *Waltz* departed from the pertinent statutory language and prior precedent.[26]

MCL 600.5856(c) provides that, upon the mailing of an NOI, "the statute of limitations or repose" is tolled during the period a plaintiff must wait before filing suit. When *Waltz* was decided, MCL 600.5852, as amended by 1988 PA 221, provided:

> If a person dies before the *period of limitations* has run or within 30 days after the *period of limitations* has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued *although the period of limitations has run.* But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run. [Emphasis added.][27]

*Waltz* latched onto the italicized language to conclude that the two-year personal representative period is not a "statute of limitations or repose" and, therefore, is not subject to tolling under MCL 600.5856(c). See *Waltz*, 469 Mich at 651 (opinion of the Court) ("By its own terms, [MCL 600.5852] is operational only within the context of the *separate* 'period of limitations' that would otherwise bar an action.").

---

[26] See, e.g., *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.) (considering " 'whether the prior decision was an abrupt and largely unexplained departure from precedent' "), quoting *Petersen*, 484 Mich at 320 (opinion by KELLY, C.J.); *Robinson*, 462 Mich at 467 (considering whether a prior decision departed from clear statutory language such that it interfered with a citizen's reasonable reliance on plain statutory language); *Ottgen*, 511 Mich at 240 (considering "whether a reader of the underlying statute would be unable to rely on its plain meaning in light of the decision's departure from that meaning").

[27] MCL 600.5852 was subsequently amended, but these amendments did not substantively alter the statutory language relied upon by *Waltz*. See 2012 PA 609, effective March 28, 2013.

15

I tend to agree with the majority's conclusion that *Waltz* adopted an overly myopic textual reading of the relevant statutes that disregarded broader statutory context and that MCL 600.5852 created an alternative statute of limitations. But, as the majority recognizes, the *Waltz* Court was faced with some inconsistencies, where the two-year period in MCL 600.5852 is not called a "statute of limitations" or "period of limitations"[28] and is defined as providing time "although the period of limitations has run." Moreover, this two-year period does not cleanly fit the recognized legal definition of a "statute of limitations."[29] In general, a "statute of limitations" runs from the date of accrual of a cause of action, which is often when the last act or omission leading to the claim occurred or when the plaintiff discovered or should have reasonably discovered the existence of the claim. See, e.g., *Frank v Linkner*, 500 Mich 133, 142-143; 894 NW2d 574 (2017). The two-year period in MCL 600.5852 does not run from any of those dates, instead running from when the letters of authority are issued to the personal representative.[30]

---

[28] The phrase "period of limitations" is often used as a synonym for a statute of limitations. See, e.g., MCL 600.5805; *Miller*, 466 Mich at 202-203.

[29] As the majority notes, there is no contention in this case that the two-year period in MCL 600.5852 is a statute of repose. While this period shares some common characteristics with a statute of repose, it is also distinct in certain respects. See *Frank v Linkner*, 500 Mich 133, 142; 894 NW2d 574 (2017) ("[A] statute of limitations is generally measured from the date a claim accrues, while a statute of repose is measured from some other particular event, such as the date of the last culpable act or omission of the defendant. Moreover, a statute of repose cuts off the liability of a defendant, and it may thereby prevent a cause of action from ever accruing.") (citation modified).

[30] The majority oversimplifies when suggesting that MCL 600.5852 must be a statute of limitations because it bars a cause of action if certain actions are not taken within the applicable period. This ignores not only the existence of statutes of repose, but also other timing requirements that Michigan courts have held are neither a statute of limitations nor a statute of repose. See *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 216; 815 NW2d 412 (2012) (holding that the one-year-back rule in MCL 500.3145(1), which precludes recovery

16

My point here is not to defend *Waltz* as reaching the best or most reasonable interpretation of the statutes. Rather, it is only to say that the statutory language does not explicitly or unambiguously indicate how these provisions are to interact.[31] To the extent we are concerned with whether *Waltz* unreasonably disrupted the public's ability to read and understand the statute's plain language (as some of our cases suggest),[32] I don't see that *Waltz* disrupted such an interest where the pertinent statutes inconsistently use legal terms of art around filing requirements. Further, given that the statutes under discussion are procedural filing rules, I am hesitant to hypothesize that citizens would have an a priori understanding of the provisions. In this context, the primary practical question is whether lawyers understand the issue such that they can properly advise a personal representative about when and how to commence a medical malpractice action. Lawyers practicing in

---

of certain incurred expenses under the no-fault act, MCL 500.3101 *et seq*., is not a statute of limitations); *St Juliana v State Police*, ___ Mich App ___, ___; ___ NW3d ___ (July 17, 2025) (Docket No. 370427); slip op at 6-8 (recognizing that, while it serves a similar function, the deadline for filing a presuit notice of intent to sue the state in MCL 600.6431 is not a statute of limitations). I express no view on the legal correctness of these characterizations or the implications of them. I cite them only to illustrate that there is authority characterizing other timing requirements that may bar an action as something other than a statute of limitations.

[31] The majority argues that, when MCL 600.5856 was amended in 1993, the Legislature would have understood use of the phrase "statute of limitations" to encompass tolling of the period in MCL 600.5852 in light of then-existing caselaw. For reasons discussed later, I find it to be at least debatable whether the pre-1993 caselaw was sufficiently clear on this issue to support that presumption.

[32] See, e.g., *Robinson*, 462 Mich at 467 ("[I]t is to the words of the statute itself that a citizen first looks for guidance in directing his actions. This is the essence of the rule of law: to know in advance what the rules of society are. Thus, if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts.").

this area have an obligation to be aware of binding, on-point caselaw and to advise their clients accordingly. See, e.g., MRPC 1.1 (providing that "[a] lawyer shall provide competent representation to a client"); *Simko v Blake*, 448 Mich 648, 656; 532 NW2d 842 (1995) ("An attorney has the duty to fashion such a strategy so that it is consistent with prevailing Michigan law.").

I'm not persuaded by the majority's assertion that *Waltz* was an abrupt change of precedent. Before *Waltz*, there were no binding appellate decisions squarely considering or resolving this specific question. See *Mullins v St Joseph Mercy Hosp*, 271 Mich App 503, 533; 722 NW2d 666 (2006) (MURPHY, J., dissenting) ("Before *Waltz*, there did not exist any binding precedent on the particular issue of whether [MCL 600.5852] was subject to tolling under [MCL 600.5856(c)] . . . .").[33] The majority relies on comments from the Court of Appeals and this Court indicating that MCL 600.5852 operates to extend the limitations period for a medical malpractice action.[34] In other contexts, we would be

---

[33] Indeed, neither the majority nor the parties identify *any* appellate decisions squarely addressing that issue before *Waltz*. This lack of on-point caselaw is likely partially attributable to the fact that the medical malpractice NOI requirement (including tolling) was added in 1993. See 1993 PA 78.

[34] See *Hardy v Maxheimer*, 429 Mich 422, 429-432, 441; 416 NW2d 299 (1987) (adopting as persuasive the reasoning of *Janes v Sackman Bros Co*, 177 F2d 928, 932 (CA 2, 1949), and holding that MCL 600.5852 operated to extend the period of limitations applicable to a wrongful-death action brought by a personal representative). See also *Hawkins v Regional Med Laboratories, PC*, 415 Mich 420, 438; 329 NW2d 729 (1982) (opinion by RYAN, J.) (stating that "MCL 600.5852 operates to extend the time in which to bring" actions for non-instantaneous death resulting from wrongful conduct); *McNeil v Quines*, 195 Mich App 199, 202; 489 NW2d 180 (1992) (stating that MCL 600.5852 extends the limitations period); *Lindsey v Harper Hosp*, 455 Mich 56, 61, 65; 564 NW2d 861 (1997) (referring to MCL 600.5852 as "the statute of limitations saving provision" and an "exception to the statute of limitations," which "operates to suspend the running of the statute until a personal representative is appointed to represent the interests of the estate"); *Omelenchuk v City of Warren*, 461 Mich 567, 577; 609 NW2d 177 (2000) (referring to

unlikely to treat such comments as creating binding precedent.[35] To the extent these comments are considered relevant, they could support the position of either the current majority or the *Waltz* majority. Compare *Miller v Mercy Mem Hosp*, 466 Mich 196, 202; 644 NW2d 730 (2002) (stating that MCL 600.5852 "is a saving statute, not a statute of limitations"), with *Omelenchuk v City of Warren*, 461 Mich 567, 577; 609 NW2d 177 (2000) (referring to the time provided by MCL 600.5852 as a "two-year limitation period"), overruled by *Waltz*, 469 Mich at 654-655.

I recognize that there is significant evidence that many attorneys and jurists reasonably assumed before *Waltz* was decided that NOI tolling applied to the two-year period in MCL 600.5852.[36] But for stare decisis purposes, I find this general understanding to be meaningfully distinct from one in which an opinion departs from established binding precedent from this Court that directly resolved an issue. Until this Court considers and

---

MCL 600.5852 as creating a "recalculated limitation period"), overruled in part by *Waltz*, 469 Mich at 655.

[35] See, e.g., *Coldwater*, 500 Mich at 172 ("[P]rinciples of law *deliberately* examined and decided by a court of competent jurisdiction should not be lightly departed.") (quotation marks and citation omitted; emphasis added); *Rayford v American House Roseville I, LLC*, ___ Mich ___, ___; ___ NW3d ___ (July 31, 2025) (Docket No. 163989); slip op at 23-24 (opining that language is nonbinding dicta if an issue is not raised by counsel and is not intentionally taken up by a court); *Haksluoto*, 500 Mich at 325 n 9 (declining to rely on dicta in a Court of Appeals opinion, while noting that " '[t]his Court, of course, is not bound by Court of Appeals decisions' "), quoting *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004).

[36] See, e.g., *Ward v Siano*, 272 Mich App 715, 736; 730 NW2d 1 (2006) (O'CONNELL, J., concurring) (arguing that, before *Waltz* was decided, "[f]ew lawyers, if any, could have predicted that [MCL 600.5856] presumably applied to the discovery rule's 'statute of limitations,' but never applies to the comparable limitations in [MCL 600.5852]. Reasonable attorneys unsurprisingly concluded that [MCL 600.5856] applied to both").

definitively resolves an issue, there's always the possibility that the governing interpretation of Michigan law will change.[37]

I disagree with the majority's suggestion that *Waltz* was a " '*largely unexplained departure from precedent.*' " *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.), quoting *Petersen*, 484 Mich at 320 (opinion by KELLY, C.J.) (emphasis added). *Waltz* included a section spanning approximately three pages explaining why the majority declined to rely on *Omelenchuk*, reasoning that the opinion employed an "imprecise choice of words" and that it was unnecessary to determine whether NOI tolling applied to MCL 600.5852 in order to resolve that case. See *Waltz*, 469 Mich at 652-655. Indeed, *Waltz* included a more robust and on-point explanation for its conclusion than was provided by the isolated statements in decisions predating *Waltz* that the majority cites as establishing precedent on this issue. One could reasonably criticize *Waltz* as legally incorrect or as *inadequately* explained. But for stare decisis to do meaningful work, I believe that there must be some daylight between disagreement with a prior court's analysis and a conclusion that the Court's decision was a " '*largely unexplained departure from precedent.*' " *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.), quoting *Petersen*, 484 Mich at 320 (opinion by KELLY, C.J.).

---

[37] See, e.g., *People v Peeler*, 509 Mich 381, 399-400; 984 NW2d 80 (2022) (recognizing a longstanding "unchallenged assumption" in our caselaw but holding that this assumption was incorrect without conducting a stare decisis analysis); *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 200-201, 204; 895 NW2d 490 (2017) (recognizing that there was a long line of binding Court of Appeals caselaw going back decades supporting a particular proposition of law but noting that this Court is not bound by that caselaw and holding that it was in error).

Thus, while I disagree with *Waltz*'s ultimate legal conclusion, I must recognize for stare decisis purposes that there were existing inconsistencies with the relevant statutory language and that the *Waltz* decision was not a departure from any binding or on-point Michigan precedent.

## C. CHANGES IN THE LAW OR FACTS

As the majority acknowledges, there have not been changes in the law or facts that undermine *Waltz*'s holding.[38]  The dispositive statutory language that *Waltz* relied upon in 2004 still remains, notwithstanding other amendments to those statutes.[39]  Moreover, as noted earlier, *Waltz*'s reasoning has not been expanded to other contexts, and there have been developments in the law that have made it easier for a personal representative to file a timely medical malpractice action notwithstanding *Waltz*.[40]

---

[38] See, e.g., *Robinson*, 462 Mich at 464 (stating that courts should consider "whether changes in the law or facts no longer justify the questioned decision"); *Petersen*, 484 Mich at 320 (opinion by KELLY, C.J.) (assessing "whether facts and circumstances have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification"); see also *Ottgen*, 511 Mich at 244 (considering whether there were changes in the law or facts that weighed either in favor of or against overruling a prior decision).

[39] See 2004 PA 87, effective April 22, 2004 (amending MCL 600.5856); 2012 PA 609, effective March 28, 2013 (amending MCL 600.5852).  I agree with the majority that the Legislature's decision to amend these statutes without altering the language *Waltz* relied upon is not dispositive in a stare decisis analysis.  See, e.g., *McCahan v Brennan*, 492 Mich 730, 749; 822 NW2d 747 (2012).  However, it is a relevant consideration that, at minimum, supports the conclusion that there is no compelling reason to overrule *Waltz*.

[40] See, e.g., *Vanslembrouck*, 277 Mich App at 567-570 (distinguishing *Waltz* and holding that MCL 600.5851(7)—which addresses medical malpractice claims that accrue before a person's eighth birthday—provides an alternative statute of limitations that is subject to NOI tolling); *Bush*, 484 Mich at 170, 177-178 (holding that a defective NOI tolls the statute of limitations and that dismissal of an action with prejudice is warranted only if a person failed to make a good-faith effort to mail a compliant NOI); *Eversole*, ___ Mich App at

21

The majority notes that multiple jurists and litigants have questioned *Waltz*'s correctness.[41]  The majority uses these criticisms to support its conclusion that both the practical-workability and reliance-interest factors from *Robinson* favor overruling *Waltz*. While such positions can be probative in a stare decisis analysis,[42] I believe that is so only to the extent they are evidence of a compelling reason to overrule a decision that goes beyond a disagreement with the legal holding.[43]  No matter how persuasive or strongly worded such statements are, the bench, bar, and public are required to comply with binding decisions rendered by a majority of this Court.  See, e.g., *Associated Builders & Contractors v Lansing*, 499 Mich 177, 192-193; 880 NW2d 765 (2016).  Thus, I fail to see how these statements in and of themselves have any significant impact on a case's practical workability or the public's reliance on the current rule.  The statements the majority

___; slip op at 11 (holding that one who improperly filed a medical malpractice action before they were named personal representative of an estate could apply the relation-back statute, MCL 700.3701, to preserve the claim even though the statutory period of limitations had since expired).

[41] See *Poniewierski v William Beaumont Hosp Royal Oak*, 513 Mich 859, 860 (2023) (WELCH, J., dissenting, joined by M. K. CAVANAGH and BOLDEN, JJ.); *Poniewierski v William Beaumont Hosp Royal Oak*, unpublished per curiam opinion of the Court of Appeals, issued December 1, 2022 (Docket No. 356925) (N. P. HOOD, J., concurring); *Mazumder v Univ of Mich Bd of Regents*, 270 Mich App 42; 715 NW2d 96 (2006), rev'd 480 Mich 1045 (2008); *Mullins*, 271 Mich App at 514 (MURPHY, J., dissenting); *Ward*, 272 Mich App at 736 (O'CONNELL, J., concurring); *McLean v McElhaney*, 269 Mich App 196, 207 n 2; 711 NW2d 775 (2005) (O'CONNELL, P.J., dissenting).

[42] See, e.g., *Robinson*, 462 Mich at 466; *Ottgen*, 511 Mich at 241-242.

[43] For example, in *Ottgen* we relied on statements from jurists questioning a prior decision because those statements illustrated that the prior decision "substantially deviates from the plain meaning of the statutes" and that the prior decision has led to "a series of workability problems involving the uncertain effects of [that decision's] analysis on related questions." *Ottgen*, 511 Mich at 241-242 (citation modified).

identifies largely go no further than to state or imply that they disagree with *Waltz*'s legal conclusion without identifying any other reason why *Waltz* should be overruled.

As the majority notes, Judge O'CONNELL's concurrence in *Ward v Siano* briefly suggests that *Waltz*'s holding creates an unfair trap for unsuspecting plaintiffs to navigate. *Ward v Siano*, 272 Mich App 715, 736; 730 NW2d 1 (2006) (O'CONNELL, J., concurring).[44] This sentiment was likely apt when he said it in 2006; there is significant evidence that *Waltz* upset settled expectations when it was decided.[45] But *Waltz* has been the law for more than 20 years and, over that time, has become the new settled expectation. And for the reasons I've explained, I don't see this new norm for a procedural filing rule— even if wrong—as creating a situation that justifies departing from stare decisis.

In sum, I see no legal or factual changes that provide a strong or compelling justification for overruling *Waltz*. To the contrary, *Waltz*'s holding has not been applied to other contexts, and subsequent decisions have mitigated the practical effect of its holding by making it easier for a personal representative to file a timely medical malpractice action.

---

[44] See also *Mazumder*, 270 Mich App at 63 (encouraging the Legislature to amend the statutes in response to *Waltz* because "[w]rongful death medical malpractice actions are generally time-consuming and difficult to evaluate; personal representatives should at least have the benefit of the two-year minimal period for filing a cause of action that the Legislature has determined is appropriate for medical malpractice actions generally").

[45] See, e.g., *Ward*, 272 Mich App at 721-722, 736 (O'CONNELL, J., concurring). This Court implicitly recognized some reasonable reliance on the existence of tolling by holding that *Waltz* did not apply retroactively to certain claims filed after *Omelenchuk* was issued. See *Mullins v St Joseph Mercy Hosp*, 480 Mich 948 (2007).

## III.  CONCLUSION

As the majority recognizes, the question of whether to overrule a prior decision requires us " 'to balance two competing considerations: the need of the community for stability in legal rules and decisions and the need of courts to correct past errors.' " *McCormick*, 487 Mich at 211 (opinion by M. F. CAVANAGH, J.), quoting *Petersen*, 484 Mich at 314 (opinion by KELLY, C.J.).  This is a delicate balance that can lead to reasonable and principled disagreement between jurists.  I recognize the awkwardness of retaining a decision that one believes is legally wrong, and I do not question whether courts have an obligation to correct past errors in appropriate circumstances.  At the same time, I believe it is important to apply stare decisis in a principled manner out of respect for this Court and to ensure legitimacy and public respect for our decisions.  In this situation, I can discern no strong or compelling reason to overrule *Waltz* that goes beyond my skepticism of its conclusion.  Thus, I respectfully dissent.

Kimberly A. Thomas
Brian K. Zahra